**The STATE of Texas**

v.

**David Allen LEE, Appellee.**

No. 168–98.

Court of Criminal Appeals of Texas.

April 12, 2000.

Stanley G. Schneider, Houston, amicus curiae.

J. Craig Jett, Dallas, for appellant.

Jeffrey L. Van Horn, First Asst. State Atty., Austin, Tom O'Connell, Dist. Atty., Carrie Chavez, Asst. Dist. Atty., McKin-ney, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, joined by MANSFIELD, PRICE, WOMACK and JOHNSON.

Appellee was charged with the offense of indecency with a child. He pled not guilty and a jury was empaneled and sworn. During her opening statement to the jury, the prosecutor made the following assertions:

> The evidence will be that early on in the investigation, Detective Raleeh, before any charges were filed, while the case was still being investigated, called [appellee] and said, I have—there are some charges, a complaint has been filed against you, and I'm interested in talking to you about it.
>
> And [appellee] said that he wasn't interested in talking about it and to call his attorney, Craig Jett, and gave him the phone number.

Appellee objected to the statements on the grounds that they were improper comments on appellee's invocation of his right to counsel and his right to remain silent. The trial court sustained appellee's objections and granted his motion for a mistrial. The State attempted to retry appellee pursuant to the same indictment. Appellee filed a pretrial application for writ of habeas corpus, claiming double jeopardy prevented the State from retrying him. The trial court held a hearing on the application and ultimately granted relief pursuant to *Bauder v. State,* 921 S.W.2d 696 (Tex. Crim.App.1996) (*"Bauder I"*), dismissing the indictment with prejudice.

The State appealed, arguing the trial court erred in barring retrial based on double jeopardy. The Court of Appeals affirmed. *State v. Lee,* 971 S.W.2d 553 (Tex.App.—Dallas 1997). The State argues *Bauder I* was not correctly applied by the Court of Appeals.[1] The State main-

---

1. Petitions for discretionary review were filed by the District Attorney (hereinafter "DA")

tains that the Court of Appeals applied the wrong law in determining whether the prosecutor's comments were error, that the prosecutor's statements were not error, and even if they were error, any error could have been cured by an instruction to disregard, and finally, that the statements were not made deliberately or recklessly.

In *Bauder I*, we held that

... a successive prosecution is jeopardy barred [under the Texas Constitution] after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial[, the Fifth Amendment standard under *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982),] but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request.

*Bauder*, 921 S.W.2d at 699. We subsequently clarified that the critical questions to be addressed in this context are:

... on the one hand, whether the appellant's motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial. Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial gamesmanship and manifestly improper methods" ... that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?

*Ex parte Bauder*, 974 S.W.2d 729, 732 (Tex.Crim.App.1998) ("*Bauder II* ").

■ The Court of Appeals held the prosecutor's statements amounted to error:

[T]he prosecutor's statement was clearly improper because it constituted a comment on appellee's invocation on his right to counsel. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App. 1991) (holding evidence of accused's invocation of right to counsel inadmissible as evidence of guilt); *Rezac v. State*, 722 S.W.2d 32, 33 (Tex.App.—Dallas 1986) (holding that invocation of constitutional right to counsel may not be relied on as evidence of guilt), *rev'd on other grounds*, 782 S.W.2d 869 (Tex.Crim.App. 1990); *see also* TEX.CODE CRIM. PROC. ANN. art. 38.38 (Vernon Pamph.1998) (noting that prosecutor in criminal case may not comment on fact that defendant has retained attorney).

*Lee*, 971 S.W.2d at 556. The court further concluded the error was so prejudicial it could not have been cured by an instruction to disregard. *Id.* Finally, the court upheld the trial court's conclusion that the prosecutor "was aware [of] but consciously disregarded the risk that an objectionable event for which [she] was responsible would require [the] mistrial." *Id.*

While the Court of Appeals held that the prosecutor's statement was an improper comment on appellee's invocation of his right to counsel, a closer look reveals that it was not an effort by appellee to invoke his right to counsel:

... [appellee] said that he wasn't interested in talking about it and to call his attorney, Craig Jett, and gave him the phone number.

Appellee was not asking for his attorney; rather, appellee was expressing his desire not to talk to Raleeh and dismissed Raleeh by referring him to his attorney. The statement is most accurately viewed as an

and the State Prosecuting Attorney (hereinafter "SPA"). We granted both petitions. The SPA urges the overruling of *Bauder I*. Because the DA's grounds are dispositive, we do not reach the SPA's arguments. The SPA's grounds for review are dismissed. *Schweinle*

*v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App. 1996); *Lemell v. State*, 915 S.W.2d 486, 490 n. 2 (Tex.Crim.App.1995); *Connor v. State*, 877 S.W.2d 325, 328 n. 1 (Tex.Crim.App. 1994).

attempt by appellee to convey his desire *to remain silent.*[2]

■ The question under *Bauder II,* then, is whether, on the one hand, admission, as substantive evidence of guilt,[3] of a defendant's prearrest and pre-*Miranda* silence, in the face of questioning by police during the investigation of a crime in which the defendant is a suspect, is "ordinary reversible error." Or, on the other hand, in commenting on such evidence, did "the prosecutor deliberately or recklessly cross[ ] 'the line between legitimate adversarial gamesmanship and manifestly im-

proper methods' . . . that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?" *See Bauder,* 974 S.W.2d at 732. The Court of Appeals held the prosecutor acted recklessly in making the comments.[4] But the Court of Appeals failed to take into account the appropriate substantive law when assessing the prosecutor's mental state. The question of a defendant's prearrest, pre-Miranda silence is one of first impression for this Court and one on which the federal courts of appeals are split.[5] In view of this state of the law, the

2. In *Combs v. Coyle,* 205 F.3d 269, 279 (6 th Cir.2000), when questioned by a police investigator, the accused told the investigator to "talk to my lawyer." The federal court explained that this statement was best viewed as communicating a desire to remain silent, rather than communicating a desire for the assistance of counsel:

> Although [the petitioner's] statement referred not to silence but to his right to an attorney, the admissibility of the statement is properly analyzed as a comment on prearrest silence. See *Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("With respect to post-Miranda warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent as well as of a desire to remain silent until an attorney has been consulted."). [The petitioner's] statement is best understood as communicating a desire to remain silent outside the presence of an attorney.

*Id.*

3. We assume without deciding that a comment made by the prosecutor in opening statement amounts to substantive evidence. We note that in *Griffin v. California,* 380 U.S. 609, 613, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court considered the prosecutor's comments in closing arguments, *and the trial court's acquiescence in such comments,* to amount to evidence: "No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance."

4. We note that the Court of Appeals viewed *Bauder I* as involving a two-step approach, but this approach was disapproved of in *Bauder II. Bauder,* 974 S.W.2d at 731. That portion of the Court of Appeals' opinion, however, does not affect our review of the Court of

Appeals' conclusion as to the prosecutor's mental state, a question which is central to an inquiry under *Bauder II.*

5. The First, Sixth, Seventh and Tenth Circuits hold that prearrest, pre-*Miranda* silence is not admissible as substantive evidence of guilt. *Combs,* at 283; *United States v. Burson,* 952 F.2d 1196, 1200–1201 (10 th Cir.1991), *cert. denied* 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *Coppola v. Powell,* 878 F.2d 1562, 1568 (1 st Cir.), *cert. denied* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989); *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1017–18 (7 th Cir.1987). The Fifth, Ninth and Eleventh Circuits have held that prearrest, pre-*Miranda* silence is admissible as substantive evidence of guilt. *United States v. Oplinger,* 150 F.3d 1061, 1066–67 (9 th Cir.1998); *United States v. Zanabria,* 74 F.3d 590 (5 th Cir.1996); *United States v. Rivera,* 944 F.2d 1563, 1568 (11 th Cir.1991). For a general discussion of the split among the federal courts, the underlying rationale for their holdings, and a historical analysis of the Fifth Amendment, *see* Maria Noelle Berger, Note, *Defining the Scope of the Privilege Against Self-Incrimination: Should Prearrest Silence be Admissible as Substantive Evidence of Guilt?* 1999 U. Ill. L Rev. 1015 (1999). State courts are also split on the issue, with some courts holding that prearrest, pre-*Miranda* silence is not admissible as substantive evidence of guilt, *State v. Moore,* 131 Idaho 814, 965 P.2d 174, 180 (1998); *State v. Dunkel,* 466 N.W.2d 425, 428–29 (Minn.Ct.App. 1991); *State v. Rowland,* 234 Neb. 846, 452 N.W.2d 758 (1990); *People v. DeGeorge,* 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11, 13 (1989); *Hartigan v. Commonwealth,* 31 Va.App. 243, 522 S.E.2d 406, 410 (1999), *reh'g granted; State v. Easter,* 130 Wash.2d 228, 922 P.2d 1285, 1291–92 (1996); *Tortolito v. State,* 901 P.2d 387, 390 (Wyo.1995), and

prosecutor's actions could not have been intentional or reckless.

■ We have explained what is meant by intentional and reckless conduct in this context. A prosecutor acts intentionally when:

> . . . believing that he cannot obtain a conviction under the circumstances with which he is confronted, and given the admissible evidence then at his disposal, deliberately offers objectionable evidence which he believes will materially improve his chances of obtaining a conviction, and the law considers the prejudicial effect of such objectionable evidence to be incurable even by a firm judicial admonishment to the jury[,]

or when:

> . . . the objectionable conduct of the prosecutor was intended to induce a motion for mistrial . . . .

*Bauder,* 921 S.W.2d at 699. A prosecutor acts recklessly when:

> . . . the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request[,]
>
> [when] . . . he is aware [his conduct] is reasonably certain to result in a mistrial[,]
>
> [or when he is] . . . aware that his conduct creates a risk that a mistrial is reasonably certain to occur, [but] consciously disregards that risk . . .

*Id.* Thus, in order for a prosecutor's offer of evidence to be viewed as an intentional or reckless act within this context, he must have either (1) "believe[d the evidence would] materially improve his chances of obtaining a conviction, and the law considers the prejudicial effect of such objectionable evidence to be incurable even by a firm judicial admonishment to the jury[;]" or (2) been "aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request" or have been aware but consciously disregarded the risk that a mistrial would be "reasonably certain" to occur as a result of his conduct.

■ The prosecutor in this case believed that because appellee was not under custodial interrogation, the evidence was admissible.[6] This was a legitimate view of the law as interpreted by some federal courts, including the Fifth Circuit. *Oplinger,* 150 F.3d at 1067 ("[p]rior to custody or indictment here, the government made no effort to compel [the defendant] to speak [and therefore] the constitutional privilege against compelled self-incrimination did not come into play"); *Zanabria,* 74 F.3d at 593 (holding prosecutor's comment on defendant's prearrest silence did not violate 5th amendment); *Rivera,* 944 F.2d at 1568 ("government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings"). Given that the law on this constitutional issue had not been addressed by the United States Supreme Court or by this

---

other courts holding that prearrest, pre-*Miranda* silence does not implicate the Fifth Amendment, *State v. Leecan,* 198 Conn. 517, 504 A.2d 480, 484 (1986); *Key–El v. State,* 349 Md. 811, 709 A.2d 1305, 1310–11(Md.), *cert. denied* 525 U.S. 917, 119 S.Ct. 267, 142 L.Ed.2d 220 (1998); *State v. Masslon,* 746 S.W.2d 618, 626 (Mo.Ct.App.1988); *State v. Dreher,* 302 N.J.Super. 408, 695 A.2d 672, 705 (App.Div.1997) *cert. denied* 152 N.J. 10, 702 A.2d 349 (1997) *and cert. denied,* 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 723 (1998); *State v. Helgeson,* 303 N.W.2d 342, 348–49 (N.D.1981).

**6.** During the hearing outside of the presence of the jury at trial, the prosecutor argued that a mistrial should not be granted because the investigator wasn't questioning appellee "in custodial interrogation," but was simply "investigating the case." At a subsequent hearing on the matter, the prosecutor testified that she did not believe her statements amounted to a comment on appellee's invocation of his rights. The State emphasized that appellee's statement was made "in the context of a prearrest phone call" with the investigator.

Court,[7] and in view of the split among the federal courts of appeals, the prosecutor did not disregard a "risk" that a mistrial would be "required" or even that a mistrial would be "reasonably certain" to occur.[8] Neither could the prosecutor have intended to induce a mistrial, given the fact that such evidence has not been held inadmissible by this Court, and has indeed been held admissible by the Fifth Circuit and some of the other federal courts.

 Because the prosecutor's statement concerning appellee's prearrest, pre-*Miranda* silence was not clearly errone-

7. Although this Court has never rendered a holding on the issue, we have stated, in dicta, that "[p]rearrest silence is a constitutionally permissible area of inquiry." *Waldo v. State*, 746 S.W.2d 750, 755 (Tex.Crim.App.1988)(issue before Court was comment on postarrest, post-*Miranda* silence).

8. Judge Keasler believes the prosecutor's comment constituted "an objectionable event for which [the prosecutor] was responsible under *Bauder*" due to the fact that the comment violated Code of Criminal Procedure article 38.38. *Concurring opinion* at 927. We do not agree that the prosecutor's statement violated article 38.38. *See* pp. 927–28, supra. But assuming it did, article 38.38 is evidentiary in nature. Violations of evidentiary rules and provisions are generally curable with an instruction to disregard. *Waldo*, 746 S.W.2d at 752 ("It has long been the general rule and 'well settled since [1916] that error in admitting improper evidence may be generally corrected by a withdrawal and an instruction to disregard ...' "). *Bauder* did not change this rule. *Bauder*, 921 S.W.2d at 699 (emphasizing presumption that judicial admonishments are efficacious, citing *Waldo*). It would be extremely rare that admission of evidence in violation of a statute would be "so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant," in the absence of a constitutional violation. Thus, a violation of article 38.38, in circumstances that do not implicate what has been established as a constitutional violation as well, simply does not present a "risk" that a mistrial would "be reasonably certain to occur."

Judge Keasler also says *Bauder* compels upholding the mistrial in this case because

ous, it cannot be said that there was any intent to induce a mistrial or reckless disregard that a mistrial would be reasonably certain to occur.[9] The Court of Appeals erred in holding a retrial is jeopardy barred.[10] The judgment of the Court of Appeals is reversed and the trial court's order dismissing the indictment in this cause is set aside.

KEASLER, J., delivered a concurring opinion, joined by McCORMICK, P.J. and KELLER, J.

HOLLAND, J., not participating.

*Bauder* involved a violation of an evidentiary rule, as he alleges this case involves. *Concurring opinion* at 927. Judge Keasler incorrectly assumes the defendant in *Bauder* got relief on his claim. The defendant in *Bauder did not get relief*; the mistrial was not upheld in that case. *Ex parte Bauder*, 2 S.W.3d 376 (Tex.App.—San Antonio 1999) (denying relief on merits under standard set forth in *Bauder II*); *Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim.App.1998) (clarifying analysis of *Bauder I* on appeal); *Bauder v. State*, 936 S.W.2d 19 (Tex.App.—San Antonio 1996)(holding mistrial need not have been granted so no jeopardy bar); *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996)(setting forth new standard for analyzing prosecutorial misconduct under Texas Constitution); *Bauder v. State*, 880 S.W.2d 502 (Tex.App.—San Antonio 1994)(applying *Kennedy* and rejecting appellant's plea for less strenuous state standard).

9. Generally, whether the error was such that it could not have been cured by an instruction and whether the prosecutor acted in reckless disregard of such error are "essentially factual question[s]." *Bauder*, 921 S.W.2d at 700. In the instant case, however, the answers to these questions turn on the state of the law. As such, we need not give deference to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997).

10. As appellee's motion for mistrial was not precipitated by reckless or intentional conduct on the part of the prosecutor, under the *Bauder II* test, appellee's motion for mistrial was therefore "a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial." We note, however, that it is not even clear in this case, given the unsettled state of the law,

KEASLER, J., delivered a concurring opinion, in which McCORMICK, P.J. and KELLER, J., join.

Today the majority further muddles Texas double jeopardy law while clinging to an ill-conceived, historically unsound, imprecise precedent. Rather than abandoning *Bauder v. State*,[1] the majority turns a blind eye to its holding and says that it does not apply to these facts. I agree that Lee should answer to the indictment, and that double jeopardy does not prohibit his retrial. I just do not see how the majority can justify its conclusion under the language of *Bauder*.

Regardless of whether Lee was invoking his right to remain silent or invoking his right to counsel, he was without question referring the police to his lawyer, and the prosecutor mentioned this fact to the jury. The prosecutor's argument violated Art. 38.38. That statute provides that "[e]vidence that a person has contacted or retained an attorney is not admissible on the issue of whether the person committed a criminal offense" and a prosecutor may not "comment on the fact that the defendant has contacted or retained an attorney in the case." The trial court recognized this statutory violation as one of its reasons for granting the mistrial; it found that the prosecutor's comment "also violated Art. 38.38 of the Texas Code of Criminal Procedure." The prosecutor's violation of this statute was "an objectionable event for which [the prosecutor] was responsible"[2] under *Bauder*. The trial court's granting of the mistrial on these grounds directly implicates our holding in *Bauder*.

In a footnote, the majority attempts to distinguish *Bauder* from this case by saying that Article 38.38 is merely "evidentiary in nature ... curable by an instruction to disregard." But the majority overlooks the fact that *Bauder* also involved the violation of an evidentiary rule (Rule 404, Texas Rules of Evidence). The only difference is that in *Lee* we have a rule passed by the legislature, while *Bauder* dealt with a court-made rule. Is the majority saying that rules enacted by the legislature are not as important as those we promulgate? Apparently so.

## What *Bauder* Held

In *Bauder v. State*, we held for the first time that a prosecutor need not intend to goad defense counsel into moving for a mistrial for double jeopardy to bar a retrial. We said that retrial will also be prohibited "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request."[3] So jeopardy consequences under *Bauder* attach to reckless or grossly negligent prosecutorial conduct as well as intentional behavior.

### *Stare Decisis*

I realize that we should not overrule precedent lightly.[4] But *Bauder* itself did just that. Our decision in *Bauder* "lightly overruled" precedent in two ways:

- For almost seventy-five years we had interpreted the Texas Constitution to have the same meaning as the United States Constitution. We brushed aside over seven decades of precedent.[5]
- For fourteen years we embraced the plurality's holding in *Oregon v. Kennedy*,[6] which held that unless the prosecutor intended to goad the defendant into seeking a mistrial,

whether the prosecutor's statement amounted to error at all.

1. 921 S.W.2d 696 (Tex.Crim.App.1996).

2. *Bauder,* 921 S.W.2d at 699.

3. *Ibid.*

4. *Awadelkariem v. State,* 974 S.W.2d 721, 725 (Tex.Crim.App.1998).

5. *Bauder,* 921 S.W.2d at 709 (McCormick, P.J., dissenting).

6. 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

retrial was not barred.[7] We swept away the intent requirement.

In determining whether the Texas Constitution accords more protection than the Constitution of the United States, five factors are relevant: the constitutional text; the Framers' intent; the history and application of the constitutional provision; comparable jurisprudence from other states; and the practical policy considerations behind the constitutional provision. In light of those considerations, *Bauder*'s rationale is flawed.

### The Constitutional Text

The 1845, 1861, and 1866 Texas Constitutions provided that "[n]o person, for the same offense, shall be twice put in jeopardy of life or limb, nor shall a person be again put upon trial for the same offense, *after a verdict of not guilty in a court of competent jurisdiction*." In the 1869 Texas Constitution, the words "or limb" were omitted. In the 1876 version, the words "or liberty" were inserted following the word "life." The Fifth Amendment of the United States Constitution states "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb ..." Neither the Texas nor the United States Constitutional texts specifically addressed the consequences of mistrials.

### The Framers' Intent

When we look at legislative actions around the time our state constitutions were adopted, we see that the 1856 Code of Criminal Procedure provided:

Art. 18. No person for the same offence [*sic*] can be twice put in jeopardy of life or limb. This is intended to mean that no person can be subjected to a second prosecution for the same offense, after having been once prosecuted in a Court of competent jurisdiction and duly convicted.

Art. 19. The foregoing article will exempt no person from a second trial, who has been convicted on an illegal instrument or information, and the judgment thereupon arrested, nor where a new trial has been granted to the defendant, nor where a jury has been discharged without rendering a verdict, nor for any case other than that of a legal conviction.

Art. 20. By the provisions of the Constitution, an acquittal of the defendant exempts him from a second trial, or a second prosecution for the same offense, however irregular the proceedings may have been; but if the defendant shall have been acquitted upon trial, in a Court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in a Court having jurisdiction.

The provisions of Section 19 were carried forward as Section 20 of the 1879 Code of Criminal Procedure just three years after the present state constitution's adoption.

So our state constitution was initially interpreted to prohibit second trials only after legal conviction or acquittal. And there is no legal or historical basis for the contention that the Texas Constitution provides greater double jeopardy protection than the United States Constitution. Its wording certainly does not apply double jeopardy consequences where a jury has been discharged without reaching a verdict. And indeed, as we shall see, the idea of their being applied this way did not appear in constitutional jurisprudence until well into the next century.

### Application of the Constitutional Provision

In this century, our nation's courts have expanded double jeopardy protection. Classic double jeopardy protection prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and

7. *Crawford v. State,* 703 S.W.2d 655 (Tex. Crim.App.1986); *Collins v. State,* 640 S.W.2d 288 (Tex.Crim.App.1982); *Anderson v. State,* 635 S.W.2d 722 (Tex.Crim.App.1982).

multiple punishments for the same offense.[8] In recent years, the word "acquittal" has been expanded to include cases where a conviction is reversed because the evidence at trial was insufficient to convict as a matter of law.[9] Also, if a verdict at trial necessarily includes the determination of an ultimate fact issue in the defendant's favor, and if proof of that issue is necessary for the prosecution to convict the defendant in a subsequent proceeding, then the prosecution is estopped from relitigating that issue, and the defendant is acquitted of that offense.[10]

The kind of double jeopardy protection involved in *Bauder* and in this case is the "mistrial species." The Supreme Court of the United States described it as "protect[ing] a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendant to substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad faith conduct by judge or prosecutor' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." [11] When the State believes that an acquittal is likely and it attempts to avoid the acquittal by goading the defendant into moving for a mistrial, thereby prematurely terminating the proceeding, it is an effort to put the defendant twice in jeopardy. For a double jeopardy violation to occur, the trial court must grant the mistrial. And the court must grant it as a result of the prosecution's acting with intent to terminate the proceedings in an effort to avoid an acquittal.

## Comparable Jurisprudence From Other States

The overwhelming majority of our sister states follow *Oregon v. Kennedy* in interpreting their state constitutions.[12] Some

**8.** See *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664 (1969).

**9.** *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

**10.** See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

**11.** *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 276 (1976).

**12.** *Oliver v. State,* 479 So.2d 1385 (Ala.Cr. App.1985); *Piesik v. State,* 572 P.2d 94 (Alaska 1977); *Jackson v. State,* 322 Ark. 710, 911 S.W.2d 578 (Ark.1995); *People v. Valenzuela–Gonzales,* 195 Cal.App.3d 728, 241 Cal.Rptr. 114 (Cal.App. 4 Dist.1987); *People v. Espinoza,* 666 P.2d 555 (Colo.1983); *Aillon v. Manson,* 201 Conn. 675, 519 A.2d 35 (Conn.1986); *Sudler v. State,* 611 A.2d 945 (Del.Supr.1992); *State v. Iglesias,* 374 So.2d 1060 (Fla.App. 3 Dist.1979); *Dinning v. State,* 267 Ga. 879, 485 S.E.2d 464 (1997); *State v. Fairchild,* 121 Idaho 960, 829 P.2d 550 (Idaho App.1992); *People v. Ramirez,* 114 Ill.2d 125, 102 Ill.Dec. 392, 500 N.E.2d 14 (Ill.1986), *cert. denied,* 481 U.S. 1053, 107 S.Ct. 2189, 95 L.Ed.2d 845 (1987); *Wilson v. State,* 697 N.E.2d 466 (Ind.1998); *State v. Rademacher,* 433 N.W.2d 754 (Iowa 1988); *State v. Muck,* 262 Kan. 459, 939 P.2d 896 (Kan.1997); *Stamps v. Comm.,* 648 S.W.2d 868 (Ky.1983); *State v. Brossette,* 634 So.2d 1309 (La.App. 3 Cir. 1994), *writ denied,* 640 So.2d 1344 (1994); *State v. Chapman,* 496 A.2d 297 (Me.1985); *Fields v. State,* 96 Md.App. 722, 626 A.2d 1037 (Md.App.1993); *Poretta v. Comm.,* 409 Mass. 763, 569 N.E.2d 794 (Mass.1991); *Wheat v. State,* 599 So.2d 963 (Miss.1992); *State v. Clover,* 924 S.W.2d 853 (Mo.1996); *State ex rel. Forsyth v. District Court,* 216 Mont. 480, 701 P.2d 1346 (Mont.1985); *State v. Kula,* 254 Neb. 962, 579 N.W.2d 541 (Neb. 1998); *Melchor–Gloria v. State,* 99 Nev. 174, 660 P.2d 109 (Nev.1983); *State v. Duhamel,* 128 N.H. 199, 512 A.2d 420 (N.H.1986); *State v. DeMarco,* 211 N.J.Super. 421, 511 A.2d 1251 (N.J.Super.A.D.1986); *Davis v. Brown,* 87 N.Y.2d 626, 641 N.Y.S.2d 819, 664 N.E.2d 884 (N.Y.App.1996); *State v. White,* 322 N.C. 506, 369 S.E.2d 813 (N.C.1988); *State v. Loza,* 71 Ohio St.3d 61, 641 N.E.2d 1082 (Ohio 1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1983, 131 L.Ed.2d 871 (1995); *State v. Girts,* 121 Ohio App.3d 539, 700 N.E.2d 395 (Ohio App. 8 Dist.1997), *appeal not allowed,* 80 Ohio St.3d 1424, 685 N.E.2d 237 (1997); *McCarty v. State,* 904 P.2d 110 (Okla. Cr.App.1995); *State v. Diaz,* 521 A.2d 129 (R.I.1987); *State v. Anderson,* 309 S.C. 360, 422 S.E.2d 161 (S.C.App.1992), *rev'd on other grounds,* 312 S.C. 185, 439 S.E.2d 835 (S.C.

states have not addressed the issue directly, but their caselaw indicates that they will probably follow *Kennedy* when the issue arises.[13]

Of the five states other than Texas that have declined to follow *Kennedy*, two have a stricter test than *Bauder*. In New Mexico, retrial is barred under the state constitution if the official "either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial" [14] The court explained that "willful disregard" is greater than recklessness, negligence, or indifference.[15] Instead, it connotes a "conscious and purposeful decision to dismiss any concern." [16] Pennsylvania's constitution prohibits retrial if "the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." [17] Both these states require, at a minimum, some intent on the part of the prosecutor with respect to causing a mistrial. Only Arizona, Hawaii, and Oregon have double jeopardy standards as broad as those set out in *Bauder*.[18] So our decision in *Bauder* is contrary to the great weight of authority around the United States.

Of course, Texas is a sovereign state, and we should not cringe from being unique. Sometimes being right requires us to stand alone. Nevertheless, we might wonder if everyone is out of step but us when 88% to 92% of our sister states (depending on which numbers you use) disagree.

## Practical Policy Considerations

It should be clear that the "mistrial" species of double jeopardy logically extended the protection from actual acquittal to cases where acquittal was probable. It was meant to deter prosecutorial behavior intended to sabotage a trial going badly for the State. To extend it to cases where the prosecutor has no such intent and where the probable outcome of the trial is unknown is utterly absurd. But that is what *Bauder*'s language does.

## Conclusion

To avoid a ridiculous result, the majority says, in effect, "We really didn't say what we said in *Bauder*." The fact that we have had to clarify or disavow its language twice—in *"Bauder II"* [19] and again today—demonstrates how imprecise and difficult it is to apply We should specifically overrule it and return to the standard set

1993); *State v. Catch the Bear*, 352 N.W.2d 637 (S.D.1984); *State v. Tucker*, 728 S.W.2d 27 (Tenn.Cr.App.1986); *State v. Trafny*, 799 P.2d 704 (Utah 1990) (applying same test as *Kennedy* without mentioning *Kennedy*); *Robinson v. Comm.*, 17 Va.App. 551, 439 S.E.2d 622, *on rehearing*, 18 Va.App. 814, 447 S.E.2d 542 (1994); *State v. Cochran*, 51 Wash.App. 116, 751 P.2d 1194 (Wash.App.), *review denied*, 110 Wash.2d 1017 (1988); *State ex rel. Bass v. Abbot*, 180 W.Va. 119, 375 S.E.2d 590 (W.Va.1988); *State v. Quinn*, 169 Wis.2d 620, 486 N.W.2d 542 (Wis.App.), *review denied*, 491 N.W.2d 768 (1992).

13. *State v. Colton*, 234 Conn. 683, 663 A.2d 339 (Conn.1995) (applying *Kennedy* to appellate reversals), *cert. denied*, 516 U.S. 1140, 116 S.Ct. 972, 133 L.Ed.2d 892 (1996); *State v. Swartz*, 541 N.W.2d 533, 537 (Iowa App. 1995) (same); *State v. Dawson*, 431 Mich. 234, 427 N.W.2d 886 (Mich.1988).

14. *State v. Breit*, 122 N.M. 655, 930 P.2d 792, 803 (N.M.1996).

15. *Ibid.*

16. *Ibid.*

17. *Comm. v. Smith*, 532 Pa. 177, 615 A.2d 321 (Pa.1992).

18. *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261, 271 (Ariz.1984) ("indifference to a significant resulting danger of mistrial or reversal"); *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1326 (Or.1983) ("indifferent to the resulting mistrial or reversal"); *State v. Rogan*, 91 Haw. 405, 984 P.2d 1231 (1999) (retrial barred where "prosecutorial misconduct was so egregious that, from an objective viewpoint, it clearly denied the defendant the right to a fair trial").

19. *Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim.App.1998).

forth by the Supreme Court plurality in *Oregon v. Kennedy*. In doing so, we would return to the mainstream of our nation's jurisprudence. The Texas Constitution by its terms and by its history provides the identical protection against double jeopardy as does the United States Constitution. We should say so. Since we do not, I concur only in the result reached by the majority.