STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark QUINN, Defendant-Appellant.†

Court of Appeals

*No. 91–2995–CR. Submitted on briefs April 28, 1992.—Decided June 3, 1992.*

(Also reported in 486 N.W.2d 542.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *David J. Becker,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J.   Mark Quinn appeals from a judgment of conviction and a postconviction order denying his motion to vacate the conviction on double jeopardy grounds. The issue is whether double jeopardy barred a second trial after Quinn successfully moved for a mistrial of the first trial. We affirm because the trial court's finding that the prosecutor's action was not done with the intent to provoke a mistrial is not clearly erroneous.

Quinn was charged with two counts of battery and two counts of intimidating a victim, each as party to a crime. He was also charged with obstructing an officer. Quinn had two prior convictions for operating after revocation (OAR) and one for disorderly conduct. After the state rested at the first trial, defense counsel told the court and the prosecutor that he would question Quinn about the OARs but that he was not going to question Quinn about the disorderly conduct conviction.

622

On direct examination, Quinn stated that he had three convictions and that two were for OAR. On cross-examination, the following colloquy took place between the prosecutor and Quinn:

Q  . . . [Your attorney] asked you about your prior record. You indicated two of them were for driving after you have [sic] been ordered not to drive, after your license had been revoked. Is that correct?

A  Yes, sir.

Q  And the third one, he didn't ask you about —
[Defense counsel]:  Objection.

Q  —that was for beating somebody up at the Midnight Hour?
[Defense counsel]:  I would like to make a motion outside the presence of the [jury].

The defense moved for a mistrial. After considerable discussion, the court granted the motion on the grounds that the prosecutor's statement was impermissible. Because the prosecutor said that the third conviction was for "beating somebody up" instead of for disorderly conduct, the court concluded that the statement was made to mislead the jury and was prejudicial.

Quinn was tried a second time and was convicted on all counts. Prior to the second trial, however, Quinn was convicted of one count of battery and one count of making threatening phone calls. He admitted to five convictions at the second trial.

Quinn filed a postconviction motion and argued that the second trial was barred by the double jeopardy clause of the United States Constitution and the Wisconsin Constitution. The trial court found "no showing in the record that the conduct giving rise to the successful motion for a mistrial was intended to provoke the

defendant into moving for a mistrial." The court denied Quinn's motion and he appeals.

As a general rule, a mistrial declared at the defen-, dant's request does not bar retrial under double jeopardy principles. *Schroeder v. State,* 96 Wis. 2d 1, 9, 291 N.W.2d 460, 464 (1980). However, the Wisconsin Supreme Court has stated that if the defendant moves for a mistrial on the basis of prosecutorial overreaching, double jeopardy may bar a second trial if the following two elements are met:

> (1) The prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; *and* (2) the prosecutor's action was designed either to create another chance to convict, that is, to provoke a mistrial in order to get another "kick at the cat" because the first trial is going badly, or to prejudice the defendant's rights to successfully complete the criminal confrontation at the first trial, *i.e.,* to harass him by successive prosecutions.

*State v. Copening,* 100 Wis. 2d 700, 714–15, 303 N.W.2d 821, 829 (1981) (emphasis in original).

Quinn argues that the test to determine whether a prosecutor's conduct will bar a subsequent trial is no longer controlled by *Copening.* He argues that the rule is properly stated in the United States Supreme Court decision of *Oregon v. Kennedy,* 456 U.S. 667 (1982). There, the Supreme Court held that the circumstances under which a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. *Id.* at 679. Quinn

624

argues *Copening* is no longer the law because the "harassment" element is not present in *Kennedy*.

We conclude that *Copening* and *Kennedy* are consistent and state the same rule of law. The issue in *Kennedy* was whether the lower court correctly interpreted the governing standards for double jeopardy as barring retrial where the error prompting the mistrial is intended to provoke a mistrial *or* is motivated by bad faith or undertaken to harass or prejudice the defendant. *Id.* at 670. The Supreme Court noted that its previous decisions could be interpreted to mean that a generalized standard of "bad faith conduct" or "harassment" could bar a subsequent trial instead of the narrow standard of "intent" to provoke the defendant to move for a mistrial. *Id.* at 674. The Supreme Court then set forth the rule that harassment or overreaching does not bar retrial *absent intent* on the part of the prosecutor to subvert the protections against double jeopardy. *Id.* at 675–76.

The Wisconsin Supreme Court requires that the prosecutor's actions be intentional *and* that the actions be done to create another chance to convict or to harass by successive prosecutions. *Copening,* 100 Wis. 2d at 714–15, 303 N.W.2d at 829. Under *Copening,* gaining another chance to convict or to harass the defendant is against double jeopardy protections. *See id.* at 708, 713–14, 303 N.W.2d at 826, 828–29. Therefore, both courts set out the same test: In order for the defendant to invoke double jeopardy protections after successfully moving for a mistrial, the prosecutor must act with the intent to subvert the defendant's double jeopardy protections, *i.e.,* to gain another chance to convict or to harass the defendant with multiple prosecutions. We conclude that *Copening* and *Kennedy* are consistent.

625

In *Kennedy,* the Supreme Court stated that examining the prosecutor's intent involves a factual finding. *Kennedy,* 456 U.S. at 675. The trial court in this case determined that the prosecutor did not act with the intent to provoke a mistrial. Therefore, that finding of fact will not be overturned unless it is clearly erroneous. Section 805.17(2), Stats.

The trial court's finding that the prosecutor did not intend to provoke a mistrial is not clearly erroneous. First, there was considerable debate over whether a mistrial should be granted. The prosecutor stated that he did not want a mistrial. Had a mistrial been a goal of the prosecutor, we suspect that he would not have so adamantly opposed the motion and defended his questioning. The prosecutor also suggested that the trial court give the jury a curative instruction instead of granting a mistrial.

Second, an examination of the trial transcript does not demonstrate an intent to provoke a mistrial. The trial transcript does not indicate that the trial was going badly and that the prosecutor was looking for a way to retry the case with better evidence or a different jury. The trial court had not made any significant evidentiary rulings against the state. During a discussion about the mistrial, the prosecutor stated that he thought the trial was going well.

Third, the prosecutor explained that he believed that defense counsel's questioning of Quinn "opened the door" and allowed the prosecutor to ask about the disorderly conduct. Whether the prosecutor was correct is not raised; nevertheless, a misunderstanding of the limits of cross-examination tends to negate an intent to provoke a

mistrial through the questioning. Therefore, we conclude that the trial court's finding is not clearly erroneous.

Quinn argues, and we agree, that we have to accept the trial court's finding that the prosecutor intended to mislead the jury unless that finding is clearly erroneous. It follows, argues Quinn, that the prosecutor intended to provoke a mistrial. We disagree. An intent to mislead the jury does not necessarily mean an intent to provoke a mistrial. As the Supreme Court pointed out in *Kennedy,* every act on the part of a rational prosecutor during a trial is designed to "prejudice" the defendant by placing before the jury evidence leading to a finding of guilt.[1] *Kennedy,* 456 U.S. at 674.

Quinn argues that his double jeopardy protections were violated because the prosecutor gained a distinct advantage in the second trial by pointing out that Quinn had five convictions instead of three, by previewing his defense, and by using the testimony in the first trial to impeach him in the second trial. However, the material advantages the prosecution gained by a mistrial are irrelevant. The critical question is whether the prosecutor *intended* to provoke a mistrial in order to subvert Quinn's double jeopardy protections. Therefore, we need not consider the actual advantages the prosecution received from the mistrial.[2]

*By the Court.*—Judgment and order affirmed.

---

[1]Although we do not need to consider whether the prosecutor's statement was reversible error, we do not sanction his strategy of mischaracterizing the offense of disorderly conduct as a battery when questioning Quinn.

[2]Quinn also argues that his double jeopardy protections were

violated because he had no choice but to move for a mistrial. Again, the critical question is whether the prosecutor intended to provoke a mistrial and not whether the defendant had no choice but to move for a mistrial.