COURT OF APPEALS
DECISION
DATED AND FILED

August 2, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP5-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF504

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

ULISES GOMEZ TORRES,

DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge. *Reversed and cause remanded for further proceedings.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals from a judgment of the trial court dismissing with prejudice the State's action against Ulises Gomez Torres. The trial court granted a mistrial and dismissed with prejudice on the basis that the prosecutor engaged in prosecutorial overreaching when the prosecutor elicited information from Torres on cross-examination that potentially violated a pretrial court order. Under the applicable test, we need not resolve whether the Record supports the trial court's view that the prosecutor intentionally violated a pretrial order because we conclude that the Record does not support a finding that the prosecutor intended to provoke a mistrial in order to harass Torres or prompt a new trial at a future date. Therefore, we reverse the judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The State charged Torres with one count of repeated sexual assault of a child and one count of first-degree child sexual assault after a mother reported that Torres had sexually assaulted both of her young daughters. As the matter proceeded toward a jury trial, the trial court granted a motion in limine filed by Torres. In granting Torres's motion, the court ordered that the State was prohibited from introducing any evidence about Torres's status as an illegal immigrant or any evidence of prior bad acts by Torres.

¶3 The case proceeded to a jury trial. The State presented its case on the first two days of trial and then rested. On the third day, Torres testified in his own defense. On direct examination, Torres's trial counsel asked Torres about his immigration status. Torres indicated that he had come to the United States legally, had a valid visa to work in the United States, and that he had gone back to Mexico several times over the years to settle issues with his visa. Torres's responses on

direct examination left the jury with the impression that Torres was in the United States legally for the entire time he had been in the country.

¶4    In a discussion outside the presence of the jury, the prosecutor informed the trial court that she intended to cross-examine Torres regarding his immigration status because defense counsel had opened the door by presenting evidence regarding the same.  The prosecutor argued that Torres had lied on the stand when he stated that he had a valid visa permitting him to be in Wisconsin.  She argued that further questioning on that topic was relevant to Torres's truthfulness.  The trial court concluded that the defense had not opened the door up sufficiently to allow the State to ask Torres further questions about his immigration status, particularly considering that the court had issued a pretrial order prohibiting the State from doing so.  The court informed the State that the pretrial order remained in place, and it would not allow questioning about Torres's immigration status on cross-examination.

¶5    During cross-examination, the prosecutor questioned Torres about information on the leases for the apartment Torres lived in at the time of the assaults.  The following exchange occurred:

> Q. [T]hese are all filled out truthfully; correct?
>
> A. Yes.
>
> Q. Okay.  Whose Social Security number is [REDACTED]?
>
> A. It's my I-PIN number.
>
> Q. You're [sic] what?
>
>     THE INTERPRETER: Can the Interpreter ask for clarification?
>
>     THE WITNESS: (Through Interpreter) It's my tax number to fill out my taxes.

> ….
>
> Q. Your Social Security number?
>
> A. No.
>
> Q. So if I were to tell you this is actually a Social Security number that belongs to a woman in Michigan, how do you explain that?

Torres never answered the prosecutor's last question because his attorney requested a sidebar and subsequently moved for a mistrial.

¶6    Torres argued to the trial court that the prosecutor crossed the line by asking questions that implied that Torres stole someone's social security number and used it to enter the country illegally. Torres argued that this conduct went "way across the line of appropriate questions by a prosecutor[.]" The State argued that there was no basis for a mistrial because WIS. STAT. § 906.08 (2021-22)[1] allows the State to question a witness regarding specific instances of untruthfulness. The State asserted that any issues created by the prosecutor's cross-examination could be remedied by a curative instruction to the jury, rather than the extreme remedy of granting a mistrial.

¶7    The trial court took Torres's motion under advisement. The court indicated that it would consider whether a curative instruction would be sufficient to remedy the effect that the prosecutor's questions might have had on the jury. After considering the arguments of the parties, the court granted a mistrial the next day. However, it withheld its decision on whether the dismissal was with or without prejudice to allow the parties time to brief the issue.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶8    The trial court held a hearing on the prejudice issue after the parties submitted briefs.  The court stated that the motions in limine played a "[p]ivotal" role in its decisionmaking process.  It dismissed the action against Torres with prejudice, concluding that the prosecutor was "overreaching" by questioning Torres on topics that were prohibited by motions in limine.  The trial court recited the correct legal standard for determining whether a prosecutor was overreaching, explaining that retrial following a mistrial is barred if:  (1) the prosecutor's conduct demonstrated a culpable state of mind and awareness that the conduct would be prejudicial, and (2) the prosecutor's conduct was designed to cause a new trial or to prejudice the defendant's right to confrontation at the trial.

¶9    As to the first element—the prosecutor's intent—the trial court found that there was not "any question" as to the prosecutor's intent on cross-examination; namely, "*the intent [was] to show [Torres] was lying, untruthful, and painting … a picture that wasn't accurate.*"  (Emphasis added.) As to the second element, the court found that the prosecutor's cross-examination "*was prejudicial to [Torres]'s right to successfully complete the criminal confrontation at the first trial*[.]"  (Emphasis added.)

¶10    The trial court found that both elements were met.  The court therefore concluded that the prosecutor was overreaching, and it dismissed the action against Torres with prejudice.  The State appeals.

## DISCUSSION

¶11    The State challenges the trial court's finding that the prosecutor intended to provoke a mistrial when the prosecutor referenced the social security number, which the court determined warranted granting Torres's motion to dismiss the charges against him with prejudice.  The issue, however, is not

whether the prosecutor intentionally violated a pretrial order. Instead, we must determine whether the prosecutor intended to provoke a mistrial.

¶12 The Fifth Amendment to the United States Constitution protects individuals from repeated attempts by the State to convict an individual for alleged offenses. U.S. CONST. amend. V. However, as a general matter, retrial of a defendant is not barred when a defendant successfully moves for a mistrial. *See State v. Jaimes*, 2006 WI App 93, ¶7, 292 Wis. 2d 656, 715 N.W.2d 669. In those situations, "the defendant is exercising control over the mistrial decision or in effect choosing to be tried by another tribunal." *Id.* An exception to this general rule exists "when a defendant moves for and obtains a mistrial due to prosecutorial overreaching." *State v. Hill*, 2000 WI App 259, ¶11, 240 Wis. 2d 1, 622 N.W.2d 34.

¶13 In *State v. Copening*, the supreme court explained:

> [A] defendant's own motion for mistrial is assumed to remove any barrier to reprosecution, even when necessitated by prosecutorial or judicial error, so long as that error does not rise to the level of "overreaching." This is because, when the defendant moves for, or consents to, a mistrial, the defendant, and not the court, exercises primary control over the course to be followed in the event of prejudicial judicial or prosecutorial error.

*Copening*, 100 Wis. 2d 700, 712, 303 N.W.2d 821 (1981) (citations omitted). The supreme court went on to articulate the two required elements

> to bar retrial of a defendant who moved for and obtained mistrial due to alleged prosecutorial overreaching: (1) The prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and (2) the prosecutor's action was designed either to create another chance to convict, that is, to provoke a mistrial in order to get another "kick at the cat" because the first trial is going badly, or to prejudice the defendant's rights to successfully

> complete the criminal confrontation at the first trial, i.e., to
> harass him by successive prosecutions.

*Id.* at 714-15.

¶14 We must accept a trial court's factual findings regarding a prosecutor's intent and design to provoke a mistrial, unless the findings are clearly erroneous. *See State v. Quinn*, 169 Wis. 2d 620, 626, 486 N.W.2d 542 (Ct. App. 1992). Whether factual findings are accurate and whether accurate factual findings form the basis for concluding that a prosecutor's conduct constitutes "overreaching," however, present issues subject to our de novo review. *Cf. id.* at 626-27. The trial court concluded that the prosecutor's conduct constituted "overreaching." We conclude, however, that the trial court's conclusion was based on clearly erroneous findings and misunderstanding regarding the applicable legal standard and that the prosecutor's conduct did not rise to the level of "overreaching."

¶15 Though our review of the Record provides support for the trial court's view that the prosecutor knew or should have known that her reference to the social security number on cross-examination was inappropriate, we need not resolve that issue. Even assuming an intentional violation of the pretrial order by the prosecutor, the Record does not support dismissal with prejudice because the Record does not support a finding that "the prosecutor acted with intent to gain another chance to convict or to harass the defendant with multiple prosecutions." *See Hill*, 240 Wis. 2d 1, ¶12. We have observed that the advancement by a prosecutor of an erroneous view, even in spite of an admonition by the trial court, is not alone sufficient to establish an intent to cause a mistrial. *See id.*; *see also Copening*, 100 Wis. 2d at 713-14.

¶16   Prior to the trial court granting Torres's motion for a mistrial, the prosecutor engaged in a discussion with the court about the appropriateness of her questioning under WIS. STAT. § 906.08. The prosecutor argued against the motion for mistrial, which we have stated is an indication that a prosecutor did not intend to provoke the defendant to request a new trial. *See Hill*, 240 Wis. 2d 1, ¶¶17-18; *Quinn*, 169 Wis. 2d at 626. The prosecutor also requested that a curative instruction be given to the jury, which we have concluded constitutes further evidence that a prosecutor does not intend to provoke a mistrial. *See Quinn*, 169 Wis. 2d at 626. Furthermore, the reference to the social security number was made after the State had put on its case and rested. A retrial would result in the State having to put the two child witnesses through testifying before a full courtroom again, which would not be in the State's interest.

¶17   We further note that none of the trial court's findings or comments appear to support the view that the prosecutor was attempting to provoke a mistrial for the purpose of stopping the trial in progress and trying the case at a future date. Although the court said the cross-examination was prejudicial to Torres's right to complete the confrontation at the first trial, it did not find that to be the intent of the State. Rather, it explicitly found that the State's intent was to show that Torres "was lying." There simply is no evidence to support a conclusion that the prosecutor intended to provoke a mistrial because she thought the trial was going poorly or as an attempt to harass Torres.

¶18   We conclude the Record does not support a finding that the prosecutor intended to provoke a mistrial when she questioned Torres regarding the social security number. Accordingly, we reverse the trial court's judgment that dismissed the action with prejudice, and we remand for further proceedings consistent with this opinion.

8

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.